Argued and submitted October 5, reversed December 29, 1982

STATE OF OREGON, Acting by
and through its DEPARTMENT
OF FORESTRY by and through
J. E. SCHROEDER, State Forester,
*Respondent on Review,*
*v.*
COLUMBIA BASIN ELECTRIC CO-OP, INC.,
*Petitioner on Review,*

(CA 18390, SC 28802)

655 P2d 1053

I. Franklin Hunsaker, Portland, argued the cause for petitioner on review. With him on the petition and briefs were Robert F. Riede and Bullivant, Wright, Leedy, Johnson, Pendergrass & Hoffman, Portland.

Richard David Wasserman, Assistant Attorney General, Salem, argued the cause for respondent on review. With him on the brief were Dave Frohnmayer, Attorney General, John R. McCulloch, Jr., Solicitor General, and William F. Gary, Deputy Solicitor General, Salem.

Before Linde, Presiding Justice, and Peterson, Tanzer, Campbell, Roberts and Carson, Justices.

TANZER, J.

**TANZER, J.**

This is an action by the state to recover the cost of suppression of a forest fire from the owner of a power line running through forest land. The circuit court gave summary judgment for plaintiff. The Court of Appeals affirmed as to defendant's statutory liability but remanded for trial on the issue of whether defendant had made reasonable efforts to control the fire. We allowed review to clarify the scope of statutory liability.

The facts are not disputed. In 1950, the defendant power company constructed and energized an electric power transmission line within a 30-foot right-of-way easement obtained from Kinzua Corporation, a logging company. In 1976, the State Forestry Department issued a release for Kinzua's property by which Kinzua was released from fire liability for its logging operations. At the time of the fire, Kinzua was regularly paying fire protection assessments on its property and was a member of a forest protective association which undertook the control and suppression of fires on that property, including the easement property. That protection also inured to the benefit of defendant.

During that year, a forest fire began on the easement property when a tree fell across and broke defendant's power line. The tree was on property adjacent to and outside the area cleared by defendant for the power line. The fire was already out of control when defendant's employees arrived on the scene. The state eventually controlled and extinguished the fire.

Liability for the cost of fire suppression on forest land is governed by ORS chapter 477. The statutory provisions are ambiguous as to defendant's liability in this situation—indeed the Court of Appeals divided according to whether the statutory term "improvement" was used in its active or passive sense. We will set out the statutory scheme and then examine the legislative history for whatever light it sheds on defendant's liability under the statute.

The legislature, by enacting ORS chapter 477, has established Oregon's policy regarding forest fire suppression, assigned responsibilities under that policy and

provided for financial liability for the performance of those responsibilities. ORS chapter 477 begins with a policy statement. ORS 477.005 provides:

"(1)  The preservation of the forests and the conservation of the forest resources through the prevention and suppression of forest fires hereby are declared to be the public policy of the State of Oregon.

"(2)  In order to accomplish the purposes of the policy stated in this section:

(a)  The need for a complete and coordinated forest protection system is acknowledged; and

(b)  This chapter shall include all persons and activities designated in this chapter, irrespective as to whether or not such person or activity is concerned with the harvesting, cutting, removal or marketing of trees, timber or other forest products."

Toward that end, the detailed provisions of ORS chapter 477 grant broad authority to the state forester to regulate forest use to prevent and suppress forest fires. He may permit and regulate ongoing activities and the installation of various facilities such as power line easements, *see* ORS 477.685.[1] He also has authority to require the abatement of any fire hazard on forest lands, ORS 477.062, and the statutes particularly emphasize the need for elimination of slash and other residue from forest operations, *see, e.g.,* ORS 477.580.

The sections most pertinent to this case involve fire suppression. ORS 477.066 imposes upon every owner and operator of forest land the duty to make reasonable

---

[1] ORS 477.685 provides:

"(1) Before clearing any right of way for any highway or railroad, or any power, commercial telegraph or telephone line, or for any transmission or transportation utility right of way on any forest land, whether upon his land or that of another, where the clearing would constitute a fire hazard, every person shall file with the forester a general description of the right of way to be cleared. The forester shall issue a written permit for such clearing. The permit shall set forth the precautionary conditions and manner under which the clearing shall be done.

"* * * * *

"(3) A person engaged in clearing any right of way on forest land shall not place on adjoining land or property any forest material or debris resulting from such clearing without the permission of the owner of the adjoining land."

efforts to control and extinguish fires. If the owner or operator fails to do so or if a fire burns uncontrolled, the forester, a forest protective association or a contract agency shall extinguish the fire.[2] ORS 477.068 imposes liability on an owner/operator to repay the state forester the cost of fire suppression if it has not made the effort required by ORS 477.066 or if it is "wilful, malicious or negligent in the origin of the fire."[3] It also establishes procedures for payments and the enforcement of liability.

ORS 477.120(1) exempts owners and operators of forest land from criminal and civil liability under ORS 477.066 and 477.068 if they pay forest patrol assessments or, as in this case, if the forest land is protected pursuant to membership in a forest protective association, or under certain specified contractual arrangements. Under ORS 477.120(2), however, the exemption established by subsection (1) is not applicable to an owner or operator if he has failed in his duties in certain ways. It provides:

"The provisions of subsection (1) of this section do not apply to such owner or operator if:

(a) He is wilful, malicious or negligent in the origin of a fire on such forest land; or

(b) He has caused or permitted an operation to exist on such forest land and a fire originates thereon while the operation is in progress or as a result of the operation; or

---

[2] ORS 477.066 provides:

"(1) Each owner and operator of forest lands on which a fire exists or from which it may have spread, notwithstanding the origin or subsequent spread thereof, shall make every reasonable effort to control and extinguish such fire immediately when its existence comes to his knowledge, without awaiting instructions from the forester, and shall continue until the fire is extinguished.

"(2) If the owner or operator fails so to do, or if the fire is burning uncontrolled, the forester, or any forest protective association or agency under contract or agreement with the board for the protection of forest land against fire, and within whose protection area the fire exists, shall summarily abate the nuisance thus constituted by controlling and extinguishing the fire."

[3] ORS 477.068(1) provides:

"In case an owner or operator fails to make the effort required by ORS 477.066, or is wilful, malicious or negligent in the origin of the fire, the actual cost incurred by the forester or a forest protective association or agency in controlling or extinguishing the fire shall be paid by the owner or operator * * *."

(c)  He has failed to give notice to the forester pursuant to ORS 477.580(1) or he has failed within the time prescribed in any order or notice issued by the forester to reduce, abate, or offset any hazard determined to exist pursuant to ORS 477.062 or 477.580 and a fire originates on or spreads to the area on which such hazard exists and for which no release has been granted pursuant to ORS 477.580(3) or (4)."

Subsection 2(b) is the most pertinent provision in this case and the terms "operation" and "operation * * * in progress" are the critical terms. The issue is whether defendant's power line is an operation.

Those terms are defined in ORS 477.001:

"(13)  'Operation' means *any industrial activity or any development or improvement* on forest land, or within one-eighth of one mile of forest land, including but not limited to the clearing of land or rights of way, logging or sawmilling, thinnings or prunings, excluding, however, the culture and harvesting of agicultural crops.

"(14)  'Operation in progress' means that time when men are on the site for the purpose of an operation, including the period of time watchmen are required to be on the area pursuant to ORS 477.665, or men are engaged in hazard control or abatement work.

"(15)  'Operator' means any person who, either by himself or through his employes, agents, representatives or contractors, is carrying on or has carried on any operation." (Our emphasis.)

■    The internal evidence of chapter 477 indicates that the words "development or improvement" are used in the active sense to refer to the process of developing and improving rather than to the product of the activity. For example, the statutory definition of "operation" puts the words in a sequence with the phrase "industrial activity," suggesting a parallel meaning. The definition goes on to give examples which describe activities and results of activities ("clearing of land or rights of way, logging or sawmilling, thinnings or prunings") rather than permanent improvements or developments which were the objective of activities. The statutory definition of "operator" as any person who "is carrying on or has carried on any operation," ORS 477.001(15), suggests that an operation is

an activity which begins and ends rather than some remaining permanent fixture upon the land. The concern throughout the statutes is with hazards arising during the conduct of any activity and with hazardous conditions, principally slash and debris, remaining after the completion of the activity. Nowhere do the statutes refer to regulation of or liability from or legislative concern with permanent structures. The wording of the pertinent sections is consistent with the notion that a static object such as a power line is not an operation as that word is used in ORS chapter 477.

■    The legislative history, although not conclusive, is consistent with this interpretation. We do not have the benefit of helpful recorded proceedings in the initial enactment of the relevant statutes. In 1961, ORS chapter 477 was amended to make specific reference to responsibilities and liabilities of easement holders such as the defendant. The amendments followed this court's holding in *State v. The Calif. Ore. Power Co.*, 225 Or 604, 358 P2d 524 (1961), that a power company owning an easement for power lines through forest lands was not a "person in possession" or an operator under the then current version of the statutes. The purpose of the legislation was specifically to include power line easement holders. Appropriate amendments were made and defendant does not question that it is subject to the provisions of chapter 477.

Easement holders, however, were added to the statutory coverage as such. They were not included within the meaning of the term "operator." "Operator" was defined at ORS 477.001(13) as it now appears at subsection (15), but subsection (14) gave a distinct definition to the phrase "easement holder." This indicates that easement holders are subject to the act per se rather than as operators who carry on or have carried on any operations. Or Laws 1961, ch 603, § 1. ORS 477.037, 477.066, 477.068, 477.069, and 477.070 were all amended to add the term "easement holder" to the phrase "owner, *easement holder*, operator or person in possession" (our emphasis), sometimes followed by "respectively" or "or any of them," indicating again that an easement holder is something distinct from an operator. Easement holders were such by virtue of holding easements; operators were such because they carried on industrial

activity or development on forest land. Obviously, an easement holder might engage in activities which would also make it an operator, but it is not an operator simply by virtue of being an easement holder. Therefore, the use of the word "development" in the definition of "operation" and "operator" says nothing about the liability of an easement holder at times when the easement holder is not an operator.

Although the responsibilities and liabilities of persons subject to the act were not substantially changed in 1961, the testimony of the state forester as the proponent of the legislation and the official responsible for its execution indicates the understanding of the legislature at the time of the enactment. His testimony throughout the legislative proceedings indicates an intention to establish liability for power companies (easement holders) for fire hazards, particularly slash and debris, resulting from the clearing of the easement and the installation of lines. There is no suggestion of such an intention with regard to subsequent maintenance of the lines once they are established. He explained the bill in committee:

"* * * In view of the recent Supreme Court opinion [State v. Copco, supra], it is deemed necessary that there be no uncertainty as to whether or not a power company clearing rights-of-way over forest land will be within the scope of the Oregon forest laws. If this repealer is passed, it will bring such activity within the purview of forest land law enforcement such as the requirement for burning permits, obligation for the disposal of inflammable forest debris, and responsibility for fighting fire which may originate or spread in slashing." Minutes, House Natural Resources Committee, p 3 (April 13, 1961).

The forester also testified before the Senate committee to the same effect, although the record of his testimony ends on a note which is ambiguous as to power companies:

"* * * They [the Supreme Court] have indicated that the Act could be interpreted to include only those persons engaged in the harvesting of a forest crop, even though other users of our forest areas could and do cause additional fire hazards when clearing rights of way for roads, transmission and powerlines, and in carrying on other industrial activities. It is proposed through HB 1303 to broaden

the scope of chapter 477 by the insertion of the term 'Easement holder' and providing similar responsibilities for the control of fire as required of an owner, operator or person in possession, when such persons create additional fire hazards in using or permitting the use of forest lands. Under the proposed bill the effect of payment of fire patrol assessments on forest land is clarified as relieving the users of such lands from the responsibility for any extra costs of fire suppression unless such person is responsible for the creation of an additional hazard, by the leaving of slashings or debris, and such hazard created has not been released by the forester, or where such persons have started the fire through willfullness or neglect. * * * Mr. Phipps told the committee that they have had a considerable problem with fires caused by power lines." Minutes, Senate Natural Resources Committee (April 11, 1961).

There is no ambiguity elsewhere, however. A representative of Georgia-Pacific, a lumber company, suggested that the bill should be amended to deal with "the hazard of the power line itself," but no such amendment was made.[4] A representative of Pacific Northwest Bell Telephone Company spoke in opposition to the bill because his company did not want to be held liable due to maintenance of their lines through forest easements. The chairman of the committee, Representative Haight, told him

"I don't think you people are under this as it was aimed at people to clean up their slashings." Minutes, House Natural Resources Committee, p 2 (March 16, 1961).

The forester then testified in response to the utility company witness:

"* * * We never felt that the telephone company came under this, as they do not create a hazard. The only way they would be liable is if they come in with equipment or in some way are negligent. I fail to see where the telephone company would be affected by this because of reference to the payment of the fire patrol assessment. If you have created a hazard and have not removed it, then you would

---

[4]    "CARL W. RAYNOR: As to a hazard created by slash, we live with this continually with the power companies. There is also the hazard of the power line itself and it would seem that, that should be incorporated, that they should be responsible for the hazard created." Minutes, House Natural Resources Committee (March 2, 1961).

be held liable. * * *" Minutes, House Natural Resources Committee, p 2 (March 16, 1961).

All pertinent discussions of the bill indicate an intention to deal with negligence or with the problem of slash and other hazardous products and residue of activities. There is nothing in the legislative history to indicate that the state forester or the legislators understood the act or the amendments to provide for fire suppression reimbursement by virtue of the existence of power lines on forest lands by easement holders.

The 1973 amendments, although not as pertinent to this case, were made in a context of understanding similar to that in 1961. The bill which became Or Laws 1973, ch 46, was presented by the State Department of Forestry in conjunction with a broad range of forest interests. The primary change was to eliminate strict liability for fire caused by slash and debris and to establish a system whereby the state forester, upon notice from an operator that an operation has produced slash and debris, would inspect the site and either permit non-hazardous slash and debris to remain or direct that additional burning or removal be performed to obviate the hazard. This was done by substantial amendment of ORS 477.580 and correlating amendments elsewhere in chapter 477. ORS 477.120(2)(b) and (c) were amended to their present form and should be read in light of the permit system enacted in ORS 477.580. It is in the context of the permit system that the phrase in ORS 477.120(2)(b), "while the operation is in progress or as a result of the operation," should be understood. The amendment was made as a part of the scheme dealing with state forester regulation of slash and debris caused by ongoing activity or left at the site after termination of the activity.

The word "improvement" and the illustrative phrase "thinnings or prunings" were added to the statutory definition of "operation," ORS 477.001(13). "Improvement" should be understood in the context of a larger scheme authorizing the forester to allow or order abatement of slash or other hazardous residue of forest activities. There is no suggestion of an intention to legislate regarding permanent structures.

The state also argues that a power line is by its nature an activity because it is energized and ions push against other ions throughout the length of the wire. This notion is an intriguing invention of advocacy but seemed not to play any part in the legislative proceeding.

We conclude from our examination of the purpose and wording of ORS chapter 477 and from the legislative and administrative understanding of it which was evident during the course of the 1961 and 1973 amendments, some of which are critical to this case, that ORS 477.120(2)(b) was not intended to include a completed power line itself in the class of activities for which specific fire suppression costs can be assessed. Accordingly, judgment should be entered for the defendant.

The Court of Appeals is reversed; the circuit court judgment is reversed.